**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **CLARK A. INGRAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 13-4006-KHV** |
| **IT'S GREEK TO ME, INC., d/b/a** | ) | |
| **GTM Sportswear,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

Clark Ingram brings suit against It's Greek To Me, Inc. d/b/a GTM Sportswear ("GTM") for age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and retaliation in violation of the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. This matter is before the Court on Defendant's Motion For Summary Judgment (Doc. #52) filed June 2, 2014. For reasons stated below, the Court sustains the motion in part.

**I.     Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of

material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which he carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). To carry his burden, the nonmoving party may not rest on his pleadings but must instead set forth specific facts supported by competent evidence. Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250-51. In response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988); Olympic Club v. Those Interested Underwriters at Lloyd's London, 991 F.2d 497, 503 (9th Cir. 1993). The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251-52.

## II.    Facts

The following facts are either uncontroverted, deemed admitted or construed in the light

most favorable to plaintiff.[1]

In 1989, David Dreiling and David Barnes started GTM, a Kansas corporation with its principal place of business in Manhattan, Kansas. The business designs and manufactures sportswear for athletic teams, cheer and gymnastics squads and related markets. Currently, Dreiling is the sole owner of GTM.

In 2006, John Strawn became president of GTM. At the time, Strawn was about 33 years old.[2] Strawn served as GTM president until 2013.

In April of 2008, GTM hired plaintiff to work as director of human resources. At the time, plaintiff was 50 years old.[3] GTM later promoted plaintiff to vice president of human resources.[4] Strawn supervised plaintiff.

In 2008, plaintiff expressed concern to Dreiling regarding comments which Dreiling made at the 2008 summit which plaintiff thought were inappropriate or offensive. Plaintiff cannot recall specific examples of the comments which Dreiling made.

In 2010, GTM promoted Dreiling's personal friend, Dave Darling, to a director position. Before the promotion, in a meeting with Dreiling, Schneider and Strawn, plaintiff opposed the promotion and warned that Darling would likely violate GTM's sexual harassment policy.

During relevant times, Brenda Schneider managed two thirds of GTM's work force. She held various GTM executive and management positions including vice-president of operations,

---

[1]     The Court recites only those facts which are material to defendant's motion and disregards any facts which are not supported by record citations.

[2]     Strawn was born on August 14, 1973.

[3]     Plaintiff was born on June 6, 1956.

[4]     The record does not reflect when plaintiff received the promotion.

vice-president of sales and chief operations officer.[5]

Plaintiff and Schneider experienced friction on various issues. Others observed the conflict. Schneider did not trust plaintiff. GTM considered Schneider to be a more valuable employee than plaintiff. In particular, Strawn believed that Schneider had the ability to work within GTM's growth plan.

In May of 2010, Strawn sent plaintiff an e-mail which stated that plaintiff and Schneider needed to learn to trust each other. At one point, plaintiff and Schneider came into Strawn's office very upset with each other and arguing back and forth. Strawn said that if they did not "figure out how to work together and trust each other one of you is going to be gone."

From 2008 to 2011, plaintiff successfully increased the number of GTM employees from 451 to 820.

Sometime in 2011, in a meeting with plaintiff and Strawn, Dreiling described a female employee as having "a great ass." Plaintiff opposed the comment by refusing to condone it and asking what the comment had to do with what was being discussed.

On an unspecified date, during a discussion about promoting GTM employees Molly Smith and Miranda Hardenburger, Dreiling broke into a huge grin, moved his eyebrows up and down several times and said, "Well we all know what they have in common." Ingram Depo. at 156:17 to 157:3. Dreiling insinuated that both women shared a physical attribute in common, but he did not specifically state what it was that he thought they had in common. Id. Plaintiff left Dreiling's office, but did not say that he opposed Dreiling's statement or facial expression. Others who were

---

[5]     The record does not disclose when Schneider began working for GTM. Schneider was born on January 17, 1961.

present said things like, "Oh Dave," and "I can't believe you said that" and scattered. Id. at 157:8-19.

Over the course of plaintiff's employment with GTM, dozens of employees complained about inappropriate behavior and comments by Dreiling. While waiting for a female vice president to arrive to a meeting, Dreiling once said, "We have to wait for the boobs." Ingram Depo. at 163:9-11. On several occasions, plaintiff spoke to Strawn about Dreiling's constant inappropriate behavior.

On numerous occasions, Dreiling and Strawn made comments to employees to the effect of, "You don't have to have any experience. You just have to be smart. If you are smart enough you will be able to figure it out."[6]

Duane Cantrell served as chairman of the GTM board, consultant to senior management and mentor and coach to Strawn.[7]

In May of 2011, plaintiff sent Dreiling an email which discussed plaintiff's use of hearing aids. The email states as follows:

> You mentioned my hearing loss in the budget meeting the other day. Yes, I have a profound hearing loss and I wear hearing aids. (yes, most people don't notice them and yes I am self conscious about them) My entire family contracted scarlet fever when I was an infant and my dad was pulling duty in Japan. Part of the problem might be congenital. . . . Even with the hearing aids – I have a problem hearing. . . .

---

[6]    Plaintiff contends that these comments show a bias in favor of younger workers. See Plaintiff's Response In Opposition To Defendant's Motion For Summary Judgment ("Plaintiff's Response") (Doc. #57) at 18.

[7]    The record does not disclose when Cantrell began his relationship with GTM. For 28 years, Cantrell worked for Payless ShoeSource, where he began as a merchandiser trainee and ultimately served as president. Plaintiff held Cantrell in very high regard and believes that Cantrell knew how to run a company. Plaintiff testified that Cantrell was a good person upon which Strawn could rely for making business decisions. Cantrell is older than plaintiff.

I am sorry if it is annoying to you or embarrassing in front of visitors when I have to ask you to repeat what you have said. This is the main reason why I try to always sit in the middle of the room during meetings.

Email dated May 6, 2011, Exhibit E to Plaintiff's Response (Doc. #55).[8]

In the summer of 2011, Cantrell introduced a system that ranked executives in the areas of performance and company values. Dreiling, Strawn and Cantrell ranked plaintiff lowest in the values axis.[9]

In August of 2011, GTM hired Michelle Cromer to work as vice president of its supply chain. At the time, Cromer was 51 years old.[10] Cromer had trouble interacting with plaintiff. In Cromer's experience, plaintiff did not listen and had his own opinions and thought that he was always right and everyone else was wrong. Cromer believed that plaintiff was antagonistic and condescending to others on the executive team. Cromer further believed that plaintiff struggled with GTM values and could not serve as the keeper of GTM culture.

Other GTM vice presidents had concerns regarding trust and lack of confidence in plaintiff. Plaintiff testified that trust was necessary between members of GTM management.

In mid-September of 2011, GTM employee Chan Maddox complained of sexual harassment by Darling. Plaintiff investigated the complaint and determined that Darling had violated GTM sexual harassment policy by asking Maddox, a female subordinate, to share his hotel room on an

---

[8]    Plaintiff contends that Dreiling had made an unspecified comment about his hearing loss and use of hearing aids which related to age, and that by writing the email, plaintiff opposed the practice. Plaintiff's Response (Doc. #57) at 22.

[9]    The record does not describe the values axis. It is unclear whether they ranked plaintiff's values as the lowest of his individual strengths or the lowest visa-vis other GTM executives.

[10]    Cromer was born on April 14, 1960.

out-of-town business trip.  See Strawn Depo. at 142:2-9, Exhibit A to Plaintiff's Response (Doc. #57).

In the fall of 2011, GTM was planning an aggressive growth phase for 2012 and needed to fill many positions to reach its goals.  Plaintiff did not get enough people hired.  Dreiling asked plaintiff to come up with a plan for adding between 30 to 40 outside sales reps.  Plaintiff responded that it was not feasible to do that.[11]

On September 23, 2011, plaintiff provided positive recruiting data for outside sales rep positions and indicated that he was cautiously optimistic that the hiring goal would be met.

Dreiling told Strawn that he was concerned about plaintiff's performance.[12]  Dreiling believed that plaintiff fell short on the recruiting and development side of human resources.  Dreiling believed that plaintiff did not listen, stayed in his office, did not relate well to senior staff or employees and did not execute effectively.  Dreiling also believed that plaintiff did not understand strategic planning and did not complete the hiring necessary for GTM to move forward with its aggressive growth plan.

Strawn believed that plaintiff was not adequately performing his job.[13]  In particular, Strawn and other GTM management believed that plaintiff was unable to adjust his work style and/or philosophy to ensure that GTM had the human resources necessary to support its continued and rapid growth.  Strawn testified that at times plaintiff failed to listen and was defensive in the face of differing opinions.  Plaintiff admits that he can have a stubborn mind set.

---

[11]     The record does not disclose when the conversation between Dreiling and plaintiff occurred.

[12]     The record is unclear when the conversation between Dreiling and Strawn occurred.

[13]     The record is unclear when Strawn formed his belief.

Strawn asked Cantrell to work with plaintiff so that he could adapt and provide the human resources services needed.[14]  Cantrell advised Strawn that plaintiff struggled with long-term vision, primarily around organizational development and organizational effectiveness and efficiency.[15]

Plaintiff worked with Cantrell to prepare a "roadmap" presentation for the summit in November of 2011.  Cantrell said that plaintiff's presentation was the best of the executive team presentations.  Strawn agreed that plaintiff's presentation was pretty good and that it contained new ideas which he had not previously seen.

In late October of 2011, GTM considered terminating Maddox's employment.  On October 24, 2011, plaintiff sent Schneider, Dreiling and Strawn an email which stated as follows:

> I spoke to Bill Bahr[16] on Friday and he is concerned that if we terminated [Maddox] at this point we could get a retaliation claim for filing a EEOC charge.  We thought that we could get [Maddox's] attorney's name and have Bill speak directly to him and discuss what [his] issues are and our issue of lack of sales.

Deposition Exhibit 68, Exhibit F to Plaintiff's Response (Doc. #57).

During the week of November 28, 2011, at a meeting of vice presidents, Strawn asked everyone to go around the room and say one thing that he or she appreciated about each person.  Strawn went last.  Regarding plaintiff he said, "I appreciate Clark, though he is an old dog, he can be taught new tricks."  There was an audible gasp in the room.  Cromer said, "I can't believe you said that."  Strawn slapped plaintiff's arm and said that plaintiff knew what he meant.  Plaintiff felt embarrassed and humiliated in front of his peers.  It was clear to plaintiff that Strawn was referencing his age.

---

[14]   The record does not reflect when Strawn asked Cantrell to work with plaintiff.

[15]   The record does not reflect when Cantrell relayed his opinion to Strawn.

[16]   The record does not identify Bill Bahr.

Plaintiff sometimes referred to himself as "one of the old guys around here."  Plaintiff's Depo. at 137:19-22.

In early December of 2011, Strawn decided that he needed to make a change in leadership in human resources.  Strawn relayed his decision to Cantrell, citing a lack of positive relationship between plaintiff and the rest of the team, trust issues and lack of confidence in plaintiff's ability to move the HR function to accommodate the company's expected growth.  Cantrell said that he supported the decision.

On December 16, 2011, Strawn came into plaintiff's office and asked for his resignation.  Strawn told plaintiff that the decision to terminate his employment had to do with "fit" and had nothing to do with performance.  Dreiling also told plaintiff that the termination was not due to performance.  Dreiling stated that he thought plaintiff was "awesome" but that the two of them did not "click."  EEOC Complaint, Exhibit 17 to Plaintiff's Depo., attached as Exhibit 3 to Defendant's Memorandum In Support Of Motion For Summary Judgment ("Defendant's Memorandum") (Doc. #53) filed June 2, 2014.  At the time, plaintiff was 55 years old.

Immediately thereafter, Cantrell told plaintiff that Strawn had not discussed the termination decision with him and that he had no knowledge of it.  Cantrell said that plaintiff's summit presentation had been one of the best presentations.

GTM did not put plaintiff on a performance improvement plan and did not discipline him for performance issues.[17]  Plaintiff's personnel file contains no indication that he was not adequately performing.  Plaintiff received routine salary increases.

---

[17]     The record contains no evidence regarding GTM custom, policy or practice regarding employee discipline and/or performance improvement plans.

Strawn's most recent evaluation of plaintiff does not reflect a lack of confidence in plaintiff. His most recent evaluation was positive and rated his performance at nine on a scale of one to ten.

In June of 2010, GTM ranked plaintiff's performance at nine on a scale of one to ten and he received a merit pay increase to $118,000.  In June of 2011, GTM awarded plaintiff another merit increase to $125,000; however, plaintiff waived five per cent of the increase due to a downturn in the company's profitability.  On December 7, 2011, nine days before he was terminated, Strawn completed a payroll change to increase plaintiff's salary by the five per cent merit increase which he had previously waived.  Plaintiff's personnel file contains no criticisms, reprimands, counsel or discipline of any kind relating to performance.

Immediately following plaintiff's termination, Strawn took over his human resources duties. Four months later, in April of 2012, GTM hired Jeff Reeves to replace plaintiff as vice president of human resources.  At the time, Reeves was almost 52 years old.[18]

On June 8, 2012, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission/Oklahoma Human Rights Commission ("EEOC").  On the charge, plaintiff marked boxes which indicate that he experienced discrimination based on retaliation and age.  See Exhibit 17 to Plaintiff's Deposition at CA1000018, Exhibit 3 to Defendant's Memorandum (Doc. #53).  In describing the particulars of his claims, plaintiff stated as follows.  Regarding age discrimination, he cited (1) comments by Dreiling and Strawn that GTM employees do not need experience, they just need to be smart; and (2) Strawn's comment that plaintiff was an old dog which could be taught new tricks.  Id. at CA1000020.  Regarding retaliation, plaintiff set forth his claim under the heading "Retaliation for Opposing and not Condoning a Hostile Work Environment."

---

[18]     Reeves was born on July 3, 1960.

Id. at CA1000021-22.  In describing the particulars of his claim, plaintiff outlined several instances in which he complained to Strawn and/or Dreiling about inappropriate behavior by Dreiling around and about women and his opposition to Darling's promotion on grounds that he "was a sexual harassment lawsuit waiting to happen."  Id.

During the discovery process, GTM located e-mails which plaintiff received and sent on his work computer.  Several emails contained comments regarding individuals based on race, sexual orientation, religion and national origin which could offend some people.

## III.    Analysis

Under the ADEA, plaintiff asserts claims for age discrimination and retaliation.  In addition, under Title VII, plaintiff asserts claims for retaliation.  Defendant seeks summary judgment on all claims.  Defendant also asserts that based on after-acquired evidence, plaintiff cannot prevail on his request for front pay.

### A.    Age Discrimination

Plaintiff asserts that defendant terminated his employment because of age in violation of the ADEA.[19]  To prevail on this claim, plaintiff must prove by a preponderance of the evidence – either directly or circumstantially – that age was the "but-for" cause of the termination.  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009) (citation omitted).  Here, plaintiff relies on both direct and indirect methods of proof.  See Plaintiff's Response In Opposition To Defendant's Motion For Summary Judgment ("Plaintiff's Response") (Doc. #57) filed July 7, 2014 at 17.  Defendant asserts that plaintiff cannot prevail under either theory.

---

[19]    The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).

### 1.    Direct Evidence

Defendant asserts that plaintiff does not have direct evidence sufficient to show that age was the but-for cause for his termination.  See Defendant's Memorandum (Doc. #53) at 17-22.  When plaintiff offers direct evidence of discrimination, his claim may move forward outside the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 824 (1973).  See Tabor v. Hilti, Inc., 703 F.3d 1206, 1216 (10th Cir. 2013).  Unless plaintiff shows that the speaker had decision-making authority and acted on his discriminatory beliefs, comments in the workplace that reflect personal bias do not constitute direct evidence of discrimination.  Id. (citing Ramsey v. City & Cnty. of Denver, 907 F.2d 1004, 1007-08 (10th Cir. 1990)).  To qualify as direct evidence of discrimination, the context or timing of a statement must be closely linked to the adverse action.  Id. (citing Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1118 (10th Cir. 2007)).  Moreover, if one can plausibly interpret the content and context of a statement in two different ways – one discriminatory and the other benign – the statement does not qualify as direct evidence of discrimination.  Id.

As direct evidence of discrimination, plaintiff points to comments by Strawn and Dreiling that GTM employees "don't have to have any experience.  You just have to be smart.  If you are smart enough you will be able to figure it out."  Plaintiff asserts that these comments encouraged a young workforce.[20]  As an initial matter, it is not clear that the comments reflect a discriminatory animus based on age.  See Tabor, 703 F.3d at 1216 (not direct evidence if one can plausibly interpret statement in different ways).  In other words, one could plausibly interpret the comments to apply

---

[20]    Plaintiff also asserts that GTM management frequently discussed and deliberated the economic benefit of a younger workforce, see Plaintiff's Response (Doc. #57) at 18, but he provides no evidence to support this assertion.

equally to older employees who did not have experience in a particular area.  Moreover, plaintiff provides no evidence regarding context or timing, i.e. plaintiff provides no evidence which closely links the comments with the termination of his employment.  See Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1118 (10th Cir. 2007).  On this record, plaintiff has not shown a direct link between Strawn and Dreiling's comments and his termination.  Accordingly, the comments do not constitute direct evidence of discrimination.

Plaintiff also asserts that Strawn's statement in November of 2011, i.e. that he appreciated plaintiff because "though he is an old dog, he can be taught new tricks," constitutes direct evidence of discrimination.  Defendant responds that the statement was a compliment to plaintiff, i.e. that it was in the context of an appreciation exercise and Strawn said that plaintiff can be taught new tricks.  Even if Strawn intended to compliment plaintiff, construed on the light most favorable to plaintiff, the reference to him being an "old dog" is derogatory and tends to show a personal bias based on age.  Nevertheless, the statement does not necessarily show that Strawn decided to terminate plaintiff's employment based on age.  See Riggs, 497 F.3d at 1117 (direct evidence, if believed, proves existence of fact without inference or presumption).  Rather, construed in the light most favorable to plaintiff, the statement reflects personal bias on prejudice on behalf of Strawn which may constitute circumstantial evidence of discrimination, i.e. the trier of fact must infer discriminatory intent from his statement.  Id.  On this record, plaintiff has not shown that Strawn's statement constitutes direct evidence of discrimination.

### 2.    Circumstantial Evidence

Plaintiff contends that the same statements constitute circumstantial evidence of age discrimination.  See Plaintiff's Response (Doc. #57) at 19.  When plaintiff presents circumstantial

evidence of discrimination, the McDonnell Douglas burden-shifting framework applies.[21]  See Tabor, 703 at 1216.  Under this framework, plaintiff has the initial burden of establishing a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802; Sanders v. Sw. Bell Tel., L.P., 544 F.3d 1101, 1105 (10th Cir. 2008) (quoting Sanchez v. Denver Pub. Sch., 164 F.3d 527, 531 (10th Cir. 1998)).  If plaintiff satisfies his burden, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for its action.  McDonnell Douglas, 411 U.S. at 802-03; Sanders, 544 F.3d at 1105 (citing Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)).  If defendant does so, the burden shifts back to plaintiff to show a genuine issue of material fact whether defendant's stated reason is pretextual, i.e. unworthy of belief.  Sanders, 544 F.3d at 1105.  At all times, the burden of persuasion rests with plaintiff to show that defendant discriminated on an illegal basis.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Jones, 617 F.3d at 1278.  Ultimately, plaintiff must prove by a preponderance of the evidence that defendant would not have taken the challenged action but for his age.  See Gross, 557 U.S. at 177; Jones, 617 F.3d at 1277.

Defendant asserts that plaintiff cannot establish a prima facie case of age discrimination.  To establish a prima facie, plaintiff must show that (1) he is a member of the class protected by the ADEA; (2) he performed adequate work; (3) defendant terminated his employment; and (4) defendant replaced him with a substantially younger worker.  See Wilkerson v. Shinseki, 606 F.3d 1256, 1266 (10th Cir. 2010).  Defendant asserts that plaintiff cannot meet the fourth element, i.e. that defendant replaced him with a substantially younger employee.

---

[21]     In Jones v. Okla. City Pub. Schs., 617 F.3d 1273, 1278-79 (10th Cir. 2010), the Tenth Circuit found that after the Supreme Court decision in Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009), the McDonnell Douglas framework continues to apply to ADEA claims.

Four months after the termination, defendant hired Reeves to replace plaintiff.[22] Reeves was 51 years old, i.e. four years younger than plaintiff.  Defendant asserts that plaintiff must show that Reeves was "substantially younger," or at least five or six years younger than plaintiff.  See Defendant's Memorandum (Doc. 53) at 24-25.  Plaintiff does not respond to defendant's argument.  See Plaintiff's Response (Doc. #57) at 22.  Indeed, the case law supports defendant's assertion.  See, e.g., Bortles v. Boulder Valley Sch. Dist. No. RE 2, Case No. 12-cv-02863-RPM,  2014 WL 47326, at *4 (D. Colo. Jan. 6, 2014) (though standard not exactly clear, age differences of ten or more years generally held to be sufficiently substantial); Tolle v. Am. Drug Stores, Inc., Case No. 05-2191--KHV, 2006 WL 3256835, at 15 (D. Kan. Oct. 11, 2006) (three years and nine months insufficient); Housley v. Boeing Co., 177 F. Supp.2d 1209, 1215 (D. Kan. 2001) (four and one-half years insufficient).  Here, plaintiff's replacement was only four years younger than plaintiff.  Accordingly, on this record, plaintiff has not shown that he can satisfy the fourth element of a prima facie case, i.e. that defendant replaced him with a substantially younger employee.[23]  Defendant is entitled to summary judgment on plaintiff's age discrimination claim.

---

[22]       In his factual averments, plaintiff asserts that Strawn replaced him.  See Plaintiff's Response (Doc. #57) at 3 ¶ 21.  Construed in a light most favorable to plaintiff, the facts suggest that after GTM terminated plaintiff's employment, Strawn temporarily took over the human resources duties and then hired Reeves to permanently assume the duties.  See Strawn Depo. at 198:2-11, Exhibit A to Plaintiff's Response (Doc. #57); see also Plaintiff's Response (Doc. #57) at 3 ¶ 21 ("Reeves was hired as VP of HR, the position held by Plaintiff at the time of his termination").

[23]       In light of this finding, the Court does not address defendant's argument that plaintiff cannot show the second element of a prima facie case, i.e. that he performed adequate work.

**B.    Retaliation**

Plaintiff asserts that defendant retaliated against him in violation of the ADEA and Title VII. Defendant asserts that it is entitled to summary judgment on both claims.

**1.    ADEA Retaliation Claim**

Plaintiff claims that defendant retaliated against him because he opposed acts and practices forbidden by the ADEA.  Defendant asserts that the Court lacks subject matter jurisdiction over this claim because plaintiff has not exhausted administrative remedies.

Under the ADEA, filing a charge of discrimination with the EEOC is a jurisdictional prerequisite to filing suit.[24]  See Bertsch v. Overstock.com, 684 F.3d 1023, 1030 (10th Cir. 2012); Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005) (ADEA and Title VII have virtually identical exhustion requirements).  To exhaust administrative remedies, plaintiff generally must present his claim to the EEOC or authorized state agency and receive a right to sue letter based on that charge.  The charge "shall be in writing and signed and shall be verified."  29 C.F.R. § 1601.9.  At a minimum, it must identify the parties and "describe generally the action or practices complained of."  29 C.F.R. § 1601.12(b).  The charge tells the EEOC what to investigate, provides an opportunity to conciliate the claim and gives the charged party notice of the alleged violation.  Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2003).

A plaintiff's claim in federal court is generally limited by the scope of an administrative investigation which can reasonably be expected to follow the charge of discrimination.  MacKenzie v. City & Cnty. of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005).  In determining whether plaintiff

---

[24]    The ADEA prohibits an individual from filing suit "until ... after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission." 29 U.S.C. § 626(d)(1).

has exhausted administrative remedies as to a particular claim, courts liberally construe administrative charges. Jones v. UPS, Inc., 502 F.3d 1176, 1186 (10th Cir. 2007); Mitchell v. City & Cnty. of Denver, 112 F. App'x. 662, 667 (10th Cir. 2005) (more lenient pleading standard acknowledges that administrative charges of unlawful employment practices are regularly filled out by employees without counsel).  The charge, however, must contain facts concerning the discriminatory actions underlying each claim. Jones, 502 F.3d at 1186.  Each discrete incident of alleged discrimination or retaliation constitutes an "unlawful employment practice" for which plaintiff must exhaust. Id.

Defendant asserts that plaintiff's EEOC charge did not sufficiently allege a factual basis for a retaliation claim under the ADEA.[25]  The Court agrees.  With regard to retaliation, plaintiff described facts solely related to his opposition to actions and comments about women and to GTM creating a hostile working environment based on sexual harassment. See Exhibit 17 to Plaintiff's Deposition at CA1000021-22, Exhibit 3 to Defendant's Memorandum (Doc. #53).  In response to defendant's motion for summary judgment, plaintiff asserts generally that the EEOC charge is "sufficient to give GTM notice of Plaintiff's claims of ADEA discrimination and retaliation." Plaintiff's Response (Doc. #57) at 23.  Plaintiff provides no discussion or analysis, however, and the Court will not construct legal arguments on his behalf. See, e.g., Moore v. Bd. of County Comm'rs of County of Leavenworth, 470 F. Supp.2d 1237, 1250 (D. Kan. 2007).

On this record, plaintiff has not shown that he has exhausted administrative remedies with

_____

[25]   As noted, on June 8, 2012, plaintiff filed a charge of discrimination with the EEOC and that plaintiff marked boxes to indicate that he had experienced discrimination based on retaliation and age. See Exhibit 17 to Plaintiff's Deposition at CA1000018, Exhibit 3 to Defendant's Memorandum (Doc. #53).

respect to his ADEA retaliation claim.  Nothing in his EEOC charge put defendant on notice of  a claim of retaliation based on opposition to age-related improper conduct.  See, e.g., Apsley v. Boeing Co., 691 F.3d 1184, 1210 (10th Cir. 2012) (charge must put defendant on notice of claims; although plaintiff checked box for retaliation, narrative did not give notice that plaintiff claimed retaliation relating to gender, race or disability).  Because plaintiff has not exhausted administrative remedies on his ADEA retaliation claim, the Court lacks subject matter jurisdiction over the claim.[26]

## 2.   Title VII Retaliation Claim

Plaintiff claims that defendant retaliated against him because he opposed acts and practices forbidden by Title VII.  Defendant asserts it is entitled to summary judgment because (1) plaintiff did not engage in protected opposition and (2) plaintiff cannot show a causal connection between the alleged opposition and his termination.

Title VII makes it unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a).  To establish a prima facie claim for Title VII retaliation, plaintiff must show that (1) he engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the

---

[26]    In light of this ruling, the Court does not address defendant's argument that plaintiff cannot establish a prima facie case of ADEA retaliation.  Moreover, even if the Court did address the merits of the claim, it would sustain defendant's motion.  In particular, the Court would find that plaintiff has not produced evidence sufficient to establish a prima facie case retaliation, i.e. that (1) he engaged in protected opposition to discrimination; (2) he suffered materially adverse action; and (3) a causal connection existed between the protected activity and the materially adverse action.  See Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1202 (10th Cir. 2008).  In response to defendant's motion for summary judgment, plaintiff makes no attempt to make such a showing with respect to his ADEA retaliation claim.  See Plaintiff's Response (Doc. #57) at 23.  As noted, the Court will not construct legal arguments on the parties' behalf.  See Moore, 470 F. Supp.2d at 1250.

protected activity and the materially adverse action.  See Khalik v. United Air Lines, 671 F.3d 1188, 1193 (10th Cir. 2002).  Because plaintiff seeks to prove his claim through indirect evidence, the burden-shifting analysis of McDonnell Douglas applies.  See Lujan v. Walters, 813 F.2d 1051, 1058 (10th Cir. 1987).  Thus, if plaintiff establishes a prima facie case, the burden of production shifts to defendant.  If defendant offers a legitimate, nondiscriminatory reason for the action, the burden shifts back to plaintiff to demonstrate that the proffered explanation is pretextual.

### a.       Protected Opposition

Defendant asserts that plaintiff cannot establish the first element of a prima facie case, i.e. that he engaged in protected opposition to discrimination.  This element requires plaintiff to show that he opposed a perceived violation of Title VII, such as employer discrimination.  See, e.g., Antonio v. Sygma Network, Inc., 458 F.3d 1177, 1181 (10th Cir. 2006).  Protected opposition to discrimination can range from filing formal charges to voicing informal complaints to superiors.  Hertz v. Luzenac Am., Inc., 370 F.3d 1014, 1015 (10th Cir. 2004).  To demonstrate protected opposition to discrimination, plaintiff must show that he had a reasonable good-faith belief that the opposed behavior was discriminatory.  Id. at 1016; see Bd. of Cnty. Comm'rs, Freemont Cnty., Colo. v. EEOC, 405 F.3d 840, 852 (10th Cir. 2005).  This standard has subjective and objective components, Little v. United Tech., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997), and empowers an employee to report what he reasonably believes is discriminatory conduct without fear of reprisal.  Bd. of Cnty. Comm'rs, 405 F.3d at 852.  The complaint of discrimination may constitute protected opposition even if it is mistaken, so long as the belief that discrimination occurred was objectively reasonable and made in good faith.  See Love v. RE/MAX of Am., Inc., 738 F.2d 383, 385 (10th Cir. 1984).

Here, plaintiff alleges the following acts of protected opposition: (1) over the course of his employment, he repeatedly spoke to Dreiling and Strawn about inappropriate behavior by Dreiling which created a hostile working environment based on sex; and (2) in June of 2010, he opposed Darling's promotion due to concerns regarding sexual harassment.[27]  See Plaintiff's Response (Doc. #57) at 23-24.  Construed in the light most favorable to plaintiff, the records supports an inference that said acts constitute protected opposition under Title VII.  See, e.g., Hertz, 370 F.3d at 1015 (protected opposition includes voicing informal complaints to superiors).  Accordingly, defendant is not entitled to summary judgment on grounds that plaintiff cannot establish the first element of a prima facie case.

### b.    Causal Connection

Defendant asserts that plaintiff cannot establish the third element of a prima facie case, i.e. that a causal connection existed between the protected activity and the materially adverse action.  Where adverse action is very closely connected in time to protected activity, temporal proximity alone is sufficient to show causation.  See Meiners v. Univ. of Kan., 359 F.3d

---

[27]    Plaintiff also asserts that in late October of 2011, he opposed terminating Maddox's employment based on retaliation concerns.  See Plaintiff's Response (Doc. #57) at 24.  Specifically, plaintiff states that approximately six weeks before his termination, he "advised Strawn and Dreiling [that] it would be a concern to terminate [Maddox] at that time due to concerns of retaliation."  Id.

As an initial matter, plaintiff did not include these allegations in his EEOC complaint or in the pretrial order.  Accordingly, they are outside the scope of this lawsuit.  Moreover, plaintiff provides no evidence which suggests that he opposed terminating Maddox's employment.  The only evidence which plaintiff provides is an email which he sent to Strawn and Dreiling on October 24, 2011.  See id. at 15 ¶ 136.  In the email, plaintiff relayed information regarding a conversation with a Bill Bahr, who is not identified in the record.  Plaintiff stated that Bahr was concerned that terminating Maddox's employment could result in her filing an EEOC charge for retaliation.  Construed in the light most favorable to plaintiff, the email suggests only that plaintiff forwarded information in the context of his job as human resources director.  It does not show that plaintiff himself opposed the proposed action or otherwise engaged in protected opposition activity.

1222, 1231 (10th Cir. 2004).  Otherwise, plaintiff must rely on additional evidence to establish

causation.  Id.  Here, plaintiff alleges protected activity which is not closely connected in time to his

termination.[28]  See, e.g., Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (three-

month period standing alone insufficient to show causation); Conner v. Schnuck Mkts, Inc., 121

F.3d 1390, 1395 (10th Cir. 1997) (four-month gap standing alone insufficient to show causation).

Thus, he must produce additional evidence to show causation.  To determine whether plaintiff can

show a causal connection, the Court examines all evidence of a retaliatory motive, including

evidence of pretext which is typically considered in a later phase of the McDonnell Douglas

analysis.  See Proctor v. UPS, 502 F.3d 1200, 1209 (10th Cir. 2007); Wells v. Colo. Dept. of

Transp., 325 F.3d 1205, 1218 (10th Cir. 2003).[29]

Defendant asserts that it terminated plaintiff's employment because (1) he repeatedly failed

to meet the essential functions of his job related to recruiting and human resources development;

(2) he was fundamentally unable to cooperate and interact with key members of GTM executive and

management teams; and (3) he definitively demonstrated that he lacked vision to accomplish the

---

[28]     As noted, GTM terminated plaintiff's employment in December of 2011.  Plaintiff
asserts that he engaged in protected activity during repeated conversations over the course of his
three-year employment and in June of 2010, when he opposed Darling's promotion.

[29]     In Wells, the Tenth Circuit found that plaintiff could show causation by pointing to
evidence that the stated reason for the termination was pretextual.  See Wells, 325 F.3d at 1217–18.
In so doing, the Tenth Circuit stated as follows:

> The causal connection element of a prima facie retaliation claim requires the
> employee to show that the employer's motive for taking adverse action was its desire
> to retaliate for the protected activity.  If the employee can show that the employer's
> proffered reason for taking the adverse action is false, the factfinder could infer that
> the employer was lying to conceal its retaliatory motive.

Id. at 1218.

tasks necessary to meet GTM growth objectives.  See Defendant's Memorandum (Doc. #53) at 26.

Defendant asserts that plaintiff cannot show that the stated reasons for its actions are pretextual.  Evidence of pretext may take a variety of forms.  See Aramburu v. Boeing Co., 112 F.3d 1398, 1411 n.10 (10th Cir. 1997).  Plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence."  Morgan, 108 F.3d at 1323 (quotations omitted).

As to defendant's first stated reason, i.e. that plaintiff failed to meet the essential functions of his job related to recruiting and human resources development, plaintiff asserts that the explanation is pretextual because (1) Strawn and Dreiling told him that the termination had nothing to do with performance; (2) Cantrell said that he had made one of the best presentations at the summit a few weeks earlier; (3) plaintiff's personnel record contains no indication that he had performance issues; and (4) plaintiff routinely received positive annual evaluations and merit pay increases.  See Plaintiff's Response (Doc. #57) at 20-21.  Construed in the light most favorable to plaintiff, this evidence casts doubt on defendant's stated reason for the termination.  In particular, Strawn and Dreiling told plaintiff that the termination had nothing to do with performance and Cantrell praised plaintiff's presentation at the summit a few weeks earlier.  Now, defendant cites poor performance as one of three reasons for his termination.  On this record, one could reasonably conclude that the changes and inconsistencies in defendant's stated reasons support an inference that the stated reasons are a pretext for retaliation.  See, e.g., Kobrin v. Univ. of Minn., 34 F.3d 698, 703 (8th Cir. 1994) (substantial changes in proffered reason for employment decision support finding of pretext).

As to the second stated reason, i.e. that plaintiff was unable to cooperate and interact with key members of GTM executive and management teams, plaintiff asserts that the explanation is pretextual because (1) the issue never rose to a level requiring counsel or discipline and was not reflected in his personnel file; and (2) GTM did not discipline Schneider for her lack of trust issues with plaintiff.  See Plaintiff's Response (Doc. #57) at 21.  Construed in the light most favorable to plaintiff, these facts also cast doubt as to whether defendant's stated reasons for the discharge are truthful.  Moreover, a fact finder could reasonably conclude that inability to cooperate and interact with others relates to job performance, which defendant initially said was not the reason for his discharge.  On this record, a factfinder could reasonably conclude that defendant's stated reasons for the termination are pretextual.

As to the third stated reason, i.e. that plaintiff lacked vision to accomplish the tasks necessary to meet GTM growth objectives, plaintiff asserts that the explanation is pretextual because (1) his personnel file contains no documentation in this regard; (2) during his tenure, GTM grew from 451 to 820 employees; and (3) in the fall of 2011, he developed a hiring plan and was optimistic that he could reach the established goal.  See id.  Again, construed in the light most favorable to plaintiff, these facts create a genuine issue of material fact whether defendant's stated reasons for the discharge are truthful.  Moreover, a fact finder could reasonably conclude that plaintiff's alleged lack of vision to meet growth objectives relates to job performance, which defendant initially said was not the reason for his discharge.  On this record, a factfinder could reasonably conclude that defendant's stated reasons for the termination are pretextual.  Defendant is not entitled to summary judgment on plaintiff's Title VII retaliation claim.

### C.     After-Acquired Evidence

Plaintiff seeks front pay in the amount of $713,779.50.  See Pretrial Order (Doc. #51) filed May 20, 2014 at 13.  Defendant asserts that plaintiff cannot recover front pay because based on after-acquired evidence, it would have terminated plaintiff's employment.  Specifically, defendant asserts that during discovery, it discovered that plaintiff had received and sent offensive emails which demonstrate that plaintiff exercised bad judgment and failed to carry out his duty to enforce anti-discrimination policies.  Defendant's Memorandum (Doc. #53) at 34.

In McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 359-62 (1995), the United States Supreme Court found that as a general rule, where an employer discovers evidence of wrongdoing which would have led to the employee's termination based on lawful, legitimate grounds, an employee may not receive reinstatement or front pay as a remedy for unlawful employment discrimination.  To prevail on an after-acquired evidence defense, defendant must first show "that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known at the time of the discharge."  Id. at 362-63; see also Perkins v. Silver Mtn. Sports Club & Spa, LLC, 557 F.3d 1141, 1145 (10th Cir. 2009).  Only after an employer has met this burden may the Court consider the after-acquired evidence to limit damages available to plaintiff.  See McKennon, 513 U.S. at 362; Perkins, 557 F.3d at 1145.

Here, defendant presents no evidence that it would have terminated plaintiff's employment based on the inappropriate emails which it discovered during discovery.  On this record, defendant has not shown that as a matter of law, based on after-acquired evidence, plaintiff cannot recover front pay.  Cf. Maxwell v. AmeriCold Logistics LLC, No. 99-2209-KHV, 2000 WL 210229, at *12 (D. Kan. Feb. 8, 2000) (granting summary judgment on after-acquired evidence defense where

employer presented uncontroverted evidence that it would have terminated plaintiff's employment when it learned of misconduct).

**IT IS THEREFORE ORDERED** that <u>Defendant's Motion For Summary Judgment</u> (Doc. #52) filed June 2, 2014 be and hereby is **SUSTAINED in part**.  With regard to plaintiff's claim for age discrimination under the ADEA, the Court grants summary judgment in favor of defendant.  With regard to plaintiff's claim for retaliation in violation of the ADEA, the Court dismisses the claim for lack of subject matter jurisdiction.  Plaintiff's claim for retaliation in violation of Title VII remains in the case.

Dated this 5th day of September, 2014 at Kansas City, Kansas.

<u>s/  Kathryn H. Vratil    </u>
KATHRYN H. VRATIL
United States District Judge